Engels A. FERMIN, Appellant,

v.

STATE of Alaska, Appellee.

No. A–6138.

Court of Appeals of Alaska.

Feb. 26, 1999.

Rex Lamont Butler, Anchorage, for Appellant.

James L. Hanley, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

---

**15.** We note that the amount of paralegal fees can be considered as a factor under Rule 82(b)(3) to deviate from the (b)(1) schedule.

## OPINION

MANNHEIMER, Judge.

We are presented with a motion to reinstate an appeal that was earlier dismissed because the defendant fled Alaska. As explained below, a defendant's flight does not constitute a waiver of their right to appeal, but a fleeing defendant has no right to automatic reinstatement of the appeal upon their return to Alaska. Rather, it is the defendant's burden to demonstrate good cause for reinstating the appeal. Because the defendant in this case has failed to show good cause for reinstating his appeal, we deny his motion for reinstatement and we close this case.

In February 1996, Engels A. Fermin was convicted of third-degree misconduct involving a controlled substance (possession of cocaine with intent to distribute). Fermin appealed his conviction, arguing that all of the State's evidence should be suppressed because of a purported *Miranda* violation.[1] In *Fermin v. State*[2], we concluded that we could not resolve Fermin's claim until the superior court made additional findings of fact; we therefore remanded Fermin's case to the superior court.

In October 1997, Superior Court Judge Elaine M. Andrews held a hearing on Fermin's suppression motion, but Fermin was not present. Fermin's defense attorney announced that Fermin had left Alaska; the attorney did not know his client's whereabouts. Despite the defense attorney's objection that Fermin should be present for any hearing, Judge Andrews proceeded to take testimony and make supplemental findings of fact concerning Fermin's suppression motion.

Judge Andrews transmitted her findings to this court, but we never took action on those findings. Instead, when we discovered that Fermin had left this jurisdiction, we dismissed Fermin's appeal. In our order of May 6, 1998, we "express[ed] no opinion on whether Fermin [might] be entitled to reinstatement of his appeal if he later submit[ted] himself to, or [was] returned to, this court's jurisdiction".

Fermin has now returned to Alaska—or rather, he has been returned to Alaska. It appears that Fermin was arrested on a federal warrant when he attempted to enter the United States through customs at the Newark, New Jersey airport. Now that Fermin has returned to Alaska (in federal custody), he asks us to reinstate his appeal. He also asks us to vacate Judge Andrews's supplemental findings and order her to hold the hearing again; Fermin contends that Judge Andrews violated his due process rights when she held the renewed hearing on his suppression motion in his absence.

In *White v. State*[3], the Alaska Supreme Court rejected the notion that a defendant's flight or escape from custody necessarily constitutes an abandonment of their right to appeal their criminal conviction.[4] At the same time, however, the supreme court also rejected the notion that a defendant who absconds and later returns (or is recaptured) has a right to automatic reinstatement of their appeal. Rather, an appellate court should allow reinstatement of the appeal if the defendant demonstrates good cause for doing so. Specifically, the supreme court said:

> Because White's appeal was once properly dismissed, our holding that escape in and of itself does not constitute waiver of the right of appeal is not dispositive of this motion to reinstate. As in other similar motions, there must be a showing of good cause for the exercise of the court's discretion.

*White*, 514 P.2d at 816 (footnote omitted).

In *White*, the supreme court concluded that there was good reason for reinstating the defendant's appeal: the appeal raised an arguably meritorious issue of statutory construction, and there was no showing that the

---

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. Memorandum Opinion No. 3601, 1997 WL 242878 (Alaska App; May 7, 1997).

3. 514 P.2d 814 (Alaska 1973).

4. *See id.* at 815.

State's case had been prejudiced by the delay.[5]

Only once before—in *Ewers v. State* [6]—has this court been required to address the *White* decision and the question of whether an absconding defendant's appeal should be reinstated. Like Fermin, the defendant in *Ewers* was convicted of a felony, filed an appeal based on claims that the evidence against him was obtained illegally, and then fled Alaska.[7] Because Ewers was no longer present in this jurisdiction, his appeal was dismissed. Over two years later, Ewers was arrested in another state and extradited to Alaska. Upon his return, he asked this court to reinstate his appeal, and we granted the motion.[8]

However, when we later issued our opinion deciding the case, Judge Bryner expressed second thoughts about reinstating Ewers's appeal. In a footnote that was, in effect, a concurrence, Judge Bryner stated that he would affirm Ewers's conviction without reaching the merits of Ewers's appellate claims:

> Implicit in the supreme court's disposition in *White* is its recognition that the accused may suffer substantial prejudice from an appellate court's refusal to review potentially meritorious claims implicating the fairness of a conviction or sentence. But absent exceptional circumstances, claims such as the ones Ewers asserts here—search and seizure arguments and purported *Miranda* violations—implicate neither the fairness of a conviction nor the fairness of a sentence. An appellate court's refusal to decide the merits of such claims based on a procedural default ordinarily poses no danger of substantial prejudice to the accused. *Cf. Moreau v. State*, 588 P.2d 275, 279–80 (Alaska 1978) [ (holding that search and seizure claims ordinarily can not be raised for the first time on appeal because such errors do not affect the fundamental fairness of the fact-finding process) ]. Thus, in an appeal reinstated,

> pursuant to *White*, solely on the basis of potentially meritorious issues and an apparent absence of prejudice to the state, review on the merits should ordinarily be denied as to claims involving the exclusionary rule that have no bearing on the fairness of the conviction or sentence.

*Ewers*, 909 P.2d at 374 n. 1.

When Judge Bryner spoke of reinstating a defendant's appeal but then refusing to reach the merits of any search-and-seizure and *Miranda* issues, he implicitly declared that there is no point in reinstating a defendant's appeal if the only issues raised on appeal are search-and-seizure and *Miranda* issues. As explained above, when Fermin filed the present appeal, he raised only one issue: a purported *Miranda* violation. Although that issue remains undecided, if we followed Judge Bryner's analysis we should not allow Fermin to renew his litigation of this *Miranda* issue. Rather, we should deny Fermin's motion to reinstate this appeal. The State urges us to do just that.

We conclude, however, that the facts of Fermin's case do not require us to decide whether to follow Judge Bryner's approach. As explained above, the supreme court said in *White* that absconding defendants do not have an absolute right to reinstatement of their appeals upon their return; rather, such defendants must demonstrate good cause for reinstating their appeals. In *White*, the supreme court found the requisite good cause because White raised an arguably meritorious issue in his appeal. But, as explained in more detail below, Fermin has failed to raise an arguably meritorious appellate issue. We therefore conclude that Fermin has failed to demonstrate good cause for reinstatement of his appeal.

As we already noted, Fermin's appeal is before us for the second time. In our first decision, we analyzed Fermin's *Miranda* arguments and concluded that they were "questionable" [9], but we decided to err on the side of caution and remand Fermin's case to

5. *See id.* at 816 (footnotes omitted).

6. 909 P.2d 373 (Alaska App.1996).

7. *See id.* at 374.

8. *See id.*

9. *Fermin*, Memorandum Opinion No. 3601, page 4.

the superior court so that the superior court could make explicit findings on certain contested issues of fact.[10] Judge Andrews made the additional findings of fact, and she again rejected Fermin's *Miranda* claim.

Based on Judge Andrews's supplemental findings, it is clear that Fermin's *Miranda* claim is meritless. In Fermin's motion to reinstate this appeal, he does not assert that Judge Andrews's findings of fact are clearly erroneous (that is, unsupported by the evidence presented at the hearing), nor does he assert that his *Miranda* claim remains meritorious despite the judge's findings. Indeed, Fermin's motion to reinstate his appeal omits any discussion of the merits of his suppression motion.

■ Instead, Fermin argues that his appeal should be reinstated because of procedural unfairness during the remand proceedings. Specifically, Fermin contends that he was denied due process when the superior court held the remand hearing without him. For this reason, Fermin asks us not only to reinstate his appeal but also to vacate Judge Andrews's findings and direct her to hold the remand hearing again.

■ Fermin's due process claim is meritless. Courts have repeatedly held that defendants who voluntarily absent themselves from court hearings have no right to complain when the hearings proceed without them. *See Illinois v. Allen*[11], *Snyder v. Massachusetts*[12], *Diaz v. United States*[13], and *Brewer v. Raines*[14].

In *Brewer v. Raines*, the Ninth Circuit wrote:

It is true that one of the most basic of the rights guaranteed by the Confrontation Clause is the accused's right to be present at every stage of his trial. [citation omitted] It is equally true, however, that this right is a right that can be waived. The notion that a trial may never proceed in the defendant's absence has been expressly rejected. [citations omitted]

The discussion of the Supreme Court in *Diaz* seems particularly appropriate here. The Court quoted with approval from *Falk v. United States,* 15 App.D.C. 446, *appeal dismissed* 180 U.S. 636, 21 S.Ct. 922, 45 L.Ed. 709 (1901). In *Falk,* the defendant had been present when the trial had begun, but fled the jurisdiction during the presentation of the government's case. The trial proceeded in his absence, and the defendant was convicted. In affirming the conviction, the appeals court stated:

"It does not seem to us to be consonant with the dictates of common sense that an accused person, being at large upon bail, should be at liberty, whenever he pleased, to withdraw himself from the courts of his country and to break up a trial already commenced. The practical result of such a proposition, if allowed to be law, would be to prevent any trial whatever until the accused person himself should be pleased to permit it. . . . This would be a travesty of justice which could not be tolerated; and it is not required or justified by any regard for the right of personal liberty."

"The question is one of broad public policy, whether an accused person, placed upon trial for crime and protected by all the safeguards with which the humanity of our present criminal law sedulously surrounds him, can with impunity defy the processes of that law, paralyze the proceedings of courts and juries and turn them into a solemn farce, and ultimately compel society, for its own safety, to restrict the operation of the principle of personal liberty. Neither in criminal nor in civil cases will the law allow a person to take advantage of his own wrong. And yet this would be precisely what it would do if it permitted

---

10. *See id.,* page 5.

11. 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970).

12. 291 U.S. 97, 54 S.Ct. 330, 78 L.Ed. 674 (1934), *overruled in part by Malloy v. Hogan,* 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964).

13. 223 U.S. 442, 32 S.Ct. 250, 56 L.Ed. 500 (1912).

14. 670 F.2d 117, 118–19 (9th Cir.1982).

an escape from prison, or an absconding from the jurisdiction while at large on bail, during the pendency of a trial before a jury, to operate as a shield." 223 U.S. at 457–58, 32 S.Ct. at 254–255.

We echo these finely articulated concerns. A defendant's knowing, intelligent and voluntary absence from his trial acts as a waiver of his Sixth Amendment right to confrontation.... When, after sufficient notice, a defendant voluntarily absents himself from any proceeding, he waives any right he has to be present at that proceeding.

The record shows that the petitioner was informed of his original trial date and that his trial could be held *in absentia* if he voluntarily failed to appear. This notice was sufficient to evoke a knowledgeable waiver of petitioner's right to be present. Brewer's failure to know of the continued dates of his trial and his date of sentencing is directly attributable to his failure to keep in contact with the court and his attorney. A defendant cannot be allowed to keep himself deliberately ignorant and then complain about his lack of knowledge.

*Brewer,* 670 F.2d at 118–19.

The Arizona Court of Appeals reached a similar ruling in *State ex rel. Romley v. Superior Court.*[15] In *Romley,* the defendant fled to Colombia while awaiting trial. The defendant was aware of his scheduled trial date when he left Arizona, but he did not learn that his trial was later rescheduled. The defendant argued that, because he was unaware of the new trial date, he could not be deemed to have knowingly absented himself from the trial. The Arizona court disagreed:

[The record] point[s] to a compelling conclusion that, on the date of his escape, it hardly mattered to this defendant whether his trial was set for a few days or a few months away; the fact of his escape itself provided evidence of his intent not to appear at trial no matter when it was held.

*Romley,* 901 P.2d at 1175.

One might argue that Fermin's case is factually distinguishable from *Brewer* and *Romley* for two reasons: first, the defendants in *Brewer* and *Romley* knew of their original trial dates (even if they were ignorant of the continuances granted after their flight), and second, the defendant in *Brewer* at least was specifically told that the trial might be held in his absence if he willfully failed to appear. Although Fermin does not discuss *Brewer* or *Romley* in his brief, he does raise a similar contention: Fermin argues that it is impossible to conclude that he knowingly waived his right to be present at the remand hearing when he did not even know that a remand hearing would be held.

We disagree. The question is whether Fermin knowingly stayed away from the remand hearing. Obviously, if Fermin knew of the remand hearing and the date it was to occur, it would be easier to prove that he was knowingly absent from that hearing. But courts have found knowing waivers of the right to be present even when an absconding defendant did not know for certain that a particular judicial proceeding would be held.

For example, in *State v. Anderson*[16], the defendant disappeared before trial. The trial was held in his absence, and he was convicted. The court later sentenced Anderson *in absentia.* When Anderson was apprehended, he conceded that he had waived his right to attend his trial. But he argued that he had no way of knowing whether he would be convicted, and so he could not be deemed to have voluntarily waived his right to attend his sentencing and to present allocution. The Utah Supreme Court saw the matter otherwise:

Anderson knew of the date of his trial and had, in fact, been in contact with pretrial services up to a few days before [trial].... Had he maintained contact with pretrial services and with his attorney, as was his duty, he would have known of [his conviction and] the sentencing date. Therefore, his voluntary absence operated as a waiver of his right to be present....

Practical considerations also [militate] in favor of an in absentia sentencing in this

---

**15.** 183 Ariz. 139, 901 P.2d 1169 (App.1995).

**16.** 929 P.2d 1107 (Utah 1996).

case. As the State points out, [a] defendant might possibly absent himself for years. Meanwhile, the judge [assigned to the case] could go on to other responsibilities or retire, and the eventual sentencing would have to be performed by a judge who was unfamiliar with the case[.] At the very least, it would be a waste of judicial resources to repeat a sentencing hearing simply due to [a] defendant's caprice.

*Anderson,* 929 P.2d at 1111.

In *United States v. Mera*[17], the defendant fled to Colombia before his trial date was set. He failed to maintain contact with his attorney, and so he remained ignorant of the trial date. He was tried *in absentia* and convicted. Later, the defendant was apprehended in Colombia and extradited to the United States. Upon his return, he challenged the federal district court's decision to try him in his absence. The Second Circuit held that, under these circumstances, the federal district judge could properly conclude that Mera had voluntarily absented himself from the trial even though Mera had never learned of his trial date.[18]

The Arizona Court of Appeals adopted similar reasoning in *State v. Cook*[19]:

[A]n accused who does not know of and fails to appear at a proceeding against him may be found to have waived his right to be present there if the record [demonstrates that] criminal proceedings commenced in his presence, that he absconded knowing of his right to attend future proceedings, and that his disappearance has made it impossible to contact him with reference to these [later] proceedings.

*Cook,* 564 P.2d at 100.

Returning to Fermin's case, we conclude that Judge Andrews was authorized to hold the remand hearing in Fermin's absence. The remand hearing was, in effect, a continuation of Fermin's suppression motion—a motion that was initially litigated in the superior

court before Fermin's trial (when Fermin was present). After Fermin was convicted and appealed the suppression issue to this court, we concluded that the superior court had failed to make needed findings of fact, so we remanded Fermin's case for further proceedings. Thus, the remand hearing was a renewal of the proceedings on Fermin's suppression motion.

During the time his appeal was pending, Fermin voluntarily left the State of Alaska. The record supports the conclusion that he knowingly ignored (or, more precisely, he knowingly chose to remain ignorant of) the events occurring in his case. Thus, when the superior court held the renewed evidentiary hearing on Fermin's suppression motion, Fermin failed to attend.

The question confronting the superior court was this: could Fermin stymy the judicial process by simply ignoring his case and refusing to return to Alaska? Judge Andrews ruled that the answer was "no", and we agree.

Fermin's situation is analogous to the cases discussed above. As in *Brewer, Romley, Anderson, Mera,* and *Cook,* Fermin's failure to learn of the renewed proceedings on his suppression motion was directly attributable to his failure to keep in contact with the court and his attorney. From the record before her, Judge Andrews could justifiably conclude that Fermin did not intend to return to Alaska even if another hearing was required to resolve his suppression motion.

Here, Fermin absconded knowing of his right to attend future proceedings; his disappearance (and his concomitant failure to stay in touch with his attorney) made it impossible to apprise him of the remand hearing ordered by this court. As the *Brewer* court said, "A defendant cannot be allowed to keep himself deliberately ignorant [of a proceeding] and then complain about his lack of knowledge."[20]

---

**17.** 921 F.2d 18 (2nd Cir.1990).

**18.** *See id.* at 20–21.

**19.** 115 Ariz. 146, 564 P.2d 97 (App.1977), *overruled in part by State v. Fettis,* 136 Ariz. 58, 664 P.2d 208 (1983) (affirming the rule that an absconding defendant may be tried *in absentia,* but holding that such a defendant normally can not be sentenced *in absentia*).

**20.** *Brewer,* 670 F.2d at 119.

Fermin has failed to offer any exonerating explanation of why he left the State of Alaska, why he failed to return, and why he failed to maintain contact with his attorney or the court system. He therefore has failed to show that Judge Andrews committed error when she held the renewed suppression hearing without him. Based on the authorities discussed above, we hold that Judge Andrews was authorized to proceed with the evidentiary hearing in Fermin's absence.

As explained above, Judge Andrews considered the evidence presented at the remand hearing and again concluded that Fermin's suppression motion was meritless. Based on Judge Andrews's findings, we share that view. Fermin does not argue that the evidence fails to support Judge Andrews's findings of fact, nor does Fermin argue that his suppression motion should be granted even given Judge Andrews's findings. Fermin presents only one argument for reinstating his appeal: his contention that he was denied due process when the remand hearing took place in his absence.

Under the Alaska Supreme Court's decision in *White,* it is Fermin's burden to demonstrate a good reason for reinstating his appeal. Because the alleged due process error is the sole reason Fermin gives for reinstating his appeal, and because no due process error in fact occurred, Fermin has failed to present any good reason for reinstating his appeal.

Fermin's motion to reinstate this appeal is DENIED. The Clerk of the Appellate Courts is directed to close this file.